### WALTER J. SHERMAN v. PEOPLES INVESTMENT CO.

1. TENDENCY OF COURTS TO ADHERE TO THE COMMON LAW RULES APPLICABLE TO NEGOTIABLE PAPER.

> The tendency of the courts seems to be to adhere to the common law rules applicable to negotiable paper as closely as possible and to construe all statutes in derogation thereof with strictness.

2. DEFENSE, IF INDORSED OR DELIVERED AFTER MATURITY.

> The language of sec. 3173, Rev. Stat., which provides that "If any such bond, note, bill of exchange or check be indorsed or delivered after the day on which it is made payable," etc., applies to the first indorsement, and does not apply to an indorsement that has been made after the liability of the maker has been fixed by an indorsement and transfer before maturity, without notice.

ERROR to the Court of Common Pleas of Lucas county.

PARKER, J.

The action below was brought by the Peoples Investment Company against W. J. Sherman, on two promissory notes of five hundred dollars each, given at Dallas, Texas, January 5, 1892, made payable to the order of George G. Gray one year after date. It is set forth in the petition that these notes were before maturity, for a valuable consideration, duly indorsed, transferred and delivered by the payee thereof to the City National Bank,of Dallas, Texas, which said bank continued thereafter to hold said notes until on or about the tenth day of February, 1894, when it transferred the same for value to said plaintiff, who is now the owner and holder thereof.

It will be observed that according to the allegations of the petition the notes were transferred to the plaintiff after their maturity. That the notes were transferred to the Dallas National Bank before maturity, for value, is not controverted by the evidence.

The answer sets forth the circumstances under which the notes were obtained by Gray from the plaintiff in error—defendant below—and avers, in effect, that they were obtained through fraud and misrepresentation and that there was a failure of consideration. On the trial of the case to the court (a jury having been waived), evidence upon all the issues made by the pleadings was admitted. That relating to the circumstances under which the note was given, or the alleged fraud and failure of consideration, was objected to by the plaintiff below; the objection was overruled and the testimony went in. However, when the court came to enter up judgment, no effect was given to it, and it will be seen, therefore, that the question presented here, and the single question is: Did the plaintiff below hold these notes discharged of the alleged defenses—free from them? It will be seen that the Dallas Bank so held the notes; but it is contended on behalf of the plaintiff in error that because there was a transfer of the notes by the Dallas Bank after maturity, to the plaintiff below, that that revived the right of the defendant below to make this defense the same as he might have done had the note been retained and sued by the payee.

10 O. C. D. 3

Under the rules of the common law, it is clear that the plaintiff below would hold these notes free from this defense, just as his indorser held them. But it is urged by the plaintiff in error that a different rule obtains in Ohio, by virtue of sec. 3173, Rev. Stat., which reads as follows:

" If any such bond, note, bill of exchange or check be indorsed or delivered after the day on which it is made payable, and the indorsee institute an action thereon against the maker, drawer or acceptor, the defendant shall be allowed to set up any defense he might have made, had the action been instituted in the name and for the use of the person to whom the bond, note, bill or check was originally made payable."

The plain language of the section would seem to support the contention of the plaintiff in error; but the tendency of the courts seems to be to adhere to the common law rules applicable to negotiable paper as closely as possible and to construe all statutes in derogation thereof with strictness. This statute on the subject of promissory notes is a partial codification of the law upon that subject.

Now, the precise question here has not been passed upon, as we can discover, by any of the courts of Ohio, nor by any of the courts in any state where a statute like this is in force. As to the rule of the common law upon the subject, we are cited to 1 Daniels on Negotiable Instruments, secs. 726, 782, 786 and 893. The cases to which we have been cited by counsel for both parties would seem to throw some side-light, at least, upon the question, and are McKeeson, Admr., v. Stanberry, 3 Ohio St., 156; Johnson v. Way, 27 Ohio St., 374; Bassett v. Avery, 15 Ohio St., 299; Osborn v. McClelland, 43 Ohio St., 284; and Wyman v. Robbins, 51 Ohio St., 98.

While, as I say, we find no decision upon the precise question here presented, we think that the reasoning in certain of these cases and the principles involved in the decisions are opposed to the contention of the plaintiff in error, and that that is especially true of the case of Bassett v. Avery, et. al., *supra*. The circumstances of the case were, that one held a promissory note as an innocent purchaser for value, without notice, before maturity, discharged, therefore, from certain defenses which might have been urged against it in the hands of the payee. He transferred it by indorsement before maturity to another who had actual knowledge of the defenses against, and knew of the infirmities of the paper, and it was urged on the one hand that the person taking it with actual knowledge of these defenses took it subject to the defenses which might have been made against the paper in the hands of the payee; and, on the other hand, that his title was as good as that of the person who transferred the note to him and who held the note discharged of those defenses. The second proposition of the syllabus is as follows:

" Notice of defenses to a negotiable instrument does not affect an indorsee in no way responsible for the wrong in obtaining or putting the instrument in circulation, and whose title is derived from a party who held it, discharged of such infirmity."

The opinion upon this branch of the case is short, and I will read somewhat therefrom, beginning on page 309:

" It is claimed that although the notes may have been held by Bassett discharged of the alleged infirmity, yet, that the defenses are available against that plaintiff if he purchased with notice. The verdict and judgment having been for the defendants, it will be presumed that the plaintiff was found to have been affected with notice; otherwise, judgment would have been in his favor, notwithstanding Bassett may have

Sherman v. Peoples Investment Co.

had notice. But the proposition contended for is not tenable. In regard to the authorities cited and examined by counsel, we only deem it necessary to state that, in our opinion, they do not warrant the conclusion which he seeks to have drawn from them.

" The reason why notice lets in a defense, in cases in which, without notice, it could not be set up, is the bad faith involved in the purchase. But if a party holds a negotiable instrument discharged of defenses which may have existed between the antecedent parties, no reason is perceived why his right of sale should be any more restricted than his right to collect. The liability of the maker is then fixed. It is not increased by a subsequent sale or gift of the note to another and it would be inconsistent that the law should recognize a perfect title in a party, and yet limit his power of disposition in the manner claimed.

" Nor do we perceive the principle upon which a knowledge of the prior infirmity can be made the ground of imputing bad faith to a purchaser in no way responsible for the wrong in obtaining the paper or putting it in circulation. Notwithstanding its former invalidity he knows that it has now become valid. Payment alone, by the maker, will discharge it, and to him it must be a matter of indifference whether it be made to the holder or his indorsee."

We do not see why that language is not applicable to the situation of the parties here. The effect of this statute is, as we view it, not different from the rules of the common law upon that subject. After maturity the note is, in a sense, dishonored paper, by the common law; and it is so under this statute. One taking the paper after maturity, takes it with constructive notice of defenses and, therefore, subject thereto. That is the effect of the rule and of the statute. Now clearly this constructive notice of defense arising under and by virtue of the statute can be no stronger and work no greater rights to the one or disadvantage to the other than the actual notice which had been acquired by the indorsee in the case from which I have just read. We think that the language of sec. 3173, Rev. Stat., which provides that, " If any such bond, note, bill of exchange or check be indorsed or delivered after the day on which it is made payable," applies to the first indorsement, and does not apply to an indorsement that has been made after the liability of the maker has been fixed by an indorsement and transfer before maturity, without notice. This construction requires the importation of certain words, as if it read: "If any such bond, note, etc., shall *not* be delivered or indorsed until after the day on which it is made payable," then the indorsee takes it subject to the defenses, etc.

Entertaining these views upon the question, we affirm the judgment of the court of common pleas.

*B. A. Hayes,* for plaintiff in error.

*Geo. H. Beckwith,* for defendant in error.